## Fister v. Bollinger

*Zieber & Snyder*, for plaintiff.

*George Eves*, for defendant.

SCHAEFFER, P. J., October 2, 1944.—This cause is before us upon the petition and rule, obtained for defendant by his mother, to set aside the service of the writ of summons upon him.

The parties have agreed in writing that defendant is in the military service of the United States, having been inducted into such service about December 1, 1941, and that he has, since before the filing of this suit, been stationed outside the territory of the United States.

Plaintiff's statement of claim sets forth that the cause of action declared upon arose on August 2, 1941. Plaintiff instituted this suit on March 3, 1944.

From the stipulation of the parties we conclude that the service now in question was made, in accordance with section 1 of the Act of July 9, 1901, P. L. 614, 12 PS §291, by handing a true and attested copy of the writ of summons to defendant's mother, an adult, at defendant's dwelling house in Mercer County, Pa.

The question is whether such service is sufficient to give this court jurisdiction in plaintiff's case over defendant, a member of the armed forces of the United States, presently engaged in carrying on a gigantic war.

It is a cardinal principle of this Republic that the civil law is supreme and that all military authority is subordinate to it at all times and in all places, except where the courts are silenced by actual war.

There have, however, from time to time been a number of statutes in Pennsylvania which exempted a soldier in the actual service of the armed forces of the State or Nation from the reach of process issuing from the civil courts. The Act of April 18, 1861, P. L. 408, sec. 4, provided that "No civil process shall issue, or

be enforced against any person mustered into the service of this state or of the United States, during the term for which he shall be engaged in such service, nor until 30 days after he shall have been discharged therefrom: *Provided*, That the operation of all statutes of limitations shall be suspended upon all claims against such person during such term." This act was held to be constitutional: Breitenbach v. Bush, 44 Pa. 313. Curiously, it was reënacted in identical language by the Act of April 13, 1887, P. L. 23, sec. 127, which specifically repealed an Act of April 18, 1861, P. L. 407, and not the Act of April 18, 1861, P. L. 408, as will appear by comparing the titles and subject-matter of the statutes referred to. The Act of 1887 also repeals "all other acts . . . inconsistent with or supplied by the provisions of this act", but we agree with Judge Stewart in Davis v. Detwiller et al., 28 Dist. R. 113 (p. 115), that ". . . the Act of 1861 has never been specifically repealed, and cannot be repealed by implication because the subsequent legislation refers to the militia and to the National Guard of Pennsylvania", and not to persons in the service of the United States.

The Act of 1887 was repealed by the Act of April 5, 1927, P. L. 122 (no. 92). However, the Act of May 17, 1921, P. L. 869, sec. 50, 51 PS §77, again provides:

"No civil process shall issue or be enforced against any officer or enlisted man of the Pennsylvania National Guard in the active service of this Commonwealth or of the United States, during so much of the term as he shall be engaged in active service under orders, nor until 30 days after he shall have been relieved therefrom: Provided, That the operation of all statutes of limitations and presumptions arising from lapse of time shall be suspended upon all claims against such officer or enlisted man during such term." This act appears to be still in force.

Defendant here was not a member of the Pennsylvania National Guard; he bases his motion upon the

fact that he was inducted into the United States Army under the National Selective Service Act.

In Land Title & Trust Company et al. v. Rambo, etc., 174 Pa. 566 (1896), the Supreme Court ruled, applying the Act of April 13, 1887, supra, that on grounds of public policy a member of the State National Guard is exempt from service of summons who, in obedience to the command of the Governor, goes into a county other than that of his residence to participate in an encampment of the National Guard.

The reasoning of that case applies with equal, or greater, force to defendant here. In the Land Title case defendant was not outside of the State and there was personal service upon him; in our case, defendant is overseas and the service upon him was constructive and not personal. So far as appears, defendant here may not even have knowledge of the service. Certainly he cannot obey the summons. For him to appear in answer to the summons is not only physically impossible, but would subject him to the military penalties for desertion or disobedience to his officers. Especially in time of war, the law ought not to place him in that dilemma. Having answered the call of the Nation to render military service in time of the Nation's peril in accordance with the highest law of the land, he should not be required by any law to do anything that is inconsistent with the duties he has patriotically assumed. We think that public policy as well as the specific provision of the Act of 1861 renders him exempt under these circumstances.

In 42 Am. Jur. §137, it is said:

"Immunity or privilege from civil process is accorded, upon grounds of public policy, to persons engaged in the military service, whether in the state militia or in the regular Army, when in actual service or when going to or returning from any muster or state encampment."

But such immunity or privilege may be waived by failing to move to quash the summons, and a judgment thereafter obtained has been held to be not void, but subject to attack only in the jurisdiction in which it was rendered: Northwestern Casualty & Surety Co. v. Conaway, 210 Iowa 126, 230 N. W. 548.

The Soldiers' and Sailors' Civil Relief Act of October 17, 1940, 54 Stat. at L. 1178, c. 888, 50 U. S. C. §510, does not prohibit the institution of suit nor the issuance of process against a member of the United States armed forces.

If our opinion be correct, that the Act of 1861 is still in force, the question arises whether the stay therein granted can be upheld as constitutional because not of unreasonable duration. In Breitenbach v. Bush, supra, a Civil War case in which the defendant, a volunteer, had been mustered in for a term of three years, or during the war, the period of three years plus the 30 days additionally granted by the act was, in view of "the actual circumstances in which the country found itself at the date of the law", held to be not unreasonable or unconstitutional. Our defendant, having been inducted under the Selective Service Act, has been mustered in for the duration of the war and six months thereafter. There is here no limitation of three years; but, in view of the nature of the world crisis and the dangers with which our enemies have threatened our country and ourselves, we should hesitate to declare the Act of 1861 unconstitutional upon the ground that the period of the moratorium is either indefinite or unreasonably long. We think that the law ought to be interpreted liberally in favor of the person who has responded to his country's call in this time of extreme need. Those of us who remain at home may not unreasonably be called upon to defer some of our rights against persons who are absent from home in the armed services until such time as they may return and have an opportunity to

be heard. The act, reciprocally and properly, grants to such claimants an extension of the period within which they may institute suits.

We are not, however, basing the decision in the present case upon the Act of 1861, but upon the circumstances of the case as viewed in the light of what the Supreme Court in the Land Title case held to be the applicable public policy. Defendant here is overseas; there was no personal service upon him. The service made was by a method authorized by our statute: it was, therefore, not void. But upon the application of the person upon whom actual service was made in order to procure constructive service, sanctioned by the statute, upon defendant, we should quash the service.

It is not necessary for us to decide here whether or to what extent the court may have a discretion in deciding to quash such service. If it appear to the court that defendant, although in the armed services, can answer the summons without prejudice, it would seem that the service should not be quashed. But in the case before us we have no hesitancy in employing our judicial power, whether discretionary or not, to grant the relief prayed for.

In Carl v. Ferrell, 109 F. (2d) 351 (1940), the United States Court of Appeals for the District of Columbia, in a case arising before the existing Soldiers' and Sailors' Civil Relief Act, on the basis of the fact that Congress in the Soldiers' and Sailors' Civil Relief Act of the First World War did not see fit to exempt soldiers from the service of summons in civil suits, declined to vacate the service. However, the Nation was not then at war and no special detriment to defendant was shown, and the court did not consider the conflict between the obligation of military service in time of war and the duty of obeying the writ.

And now, to wit, October 2, 1944, the rule is made absolute and an exception directed to be noted.